IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

DENNIS WALKER,

    Plaintiff,       No. 2:11-cv-2728 GGH P

    vs.

MATTHEW CATE, et. al.,       ORDER &

    Defendants.       FINDINGS AND RECOMMENDATIONS

_____/

I. Introduction

    Plaintiff is a state prisoner proceeding pro se who seeks relief pursuant to 42 U.S.C. § 1983. Plaintiff has paid the filing fee. Presently pending is defendants' motion to dismiss this case pursuant to Federal Rules of Civil Procedure 12(b)(6) on the grounds that plaintiff has failed to state a claim upon which relief can be granted.

    The complaint alleges that defendants have violated the First, Eighth and Fourteenth Amendments and the Religious Land Use and Institutionalized Persons Act (RLUIPA) by putting into place customs and policies that force different races to share prison cells in light of Johnson v. California, 543 U.S. 499, 125 S.Ct. 1141 (2005). Johnson held that under an equal protection challenge, CDCR's unwritten policy of double-celling new/transferred inmates in initial 60–day evaluation with cellmates of same race was subject to strict scrutiny

1

standard of review. Johnson did not determine whether the CDCR policy at issue violated the Equal Protection Clause, remanding for that determination, but did hold strict scrutiny to be the applicable standard of review. Johnson, at 515. The Supreme Court held that racial classifications are viewed as immediately suspect, see id., at 509, and their usage can seriously damage the integrity of a prison system. See id., at 510-11.

      Plaintiff is a white Christian/Odinist and states his religion forbids him from sharing a cell with another race. Plaintiff states that he was classified as "Race Eligible" meaning that he could safely be double celled with inmates of other races. Plaintiff contends that this classification violated his right to due process and equal protection under the Fourteenth Amendment because his individual classification decision was not subject to strict scrutiny. Plaintiff states he is entitled to "due process strict scrutiny review." Plaintiff also contends he should have been able to call witnesses, present evidence and testify on his own behalf at the time he was classified. Plaintiff notes that many gang members are not forced to share cells with other races due to the potential for violence, thus he is being discriminated against for not being in a gang.[1]

      Plaintiff also states his religious beliefs prevent him from sharing a cell with a member of another race. When plaintiff was to be celled with a Muslim non-white inmate, plaintiff refused, stating he would be subject to harm from other white inmates for sharing a cell with a non-white, which would also violate the Eighth Amendment. Plaintiff was not forced to share the cell with the Muslim inmate and instead was issued a Rule Violation Report and placed in Administrative Segregation for refusing a cellmate. The Rule Violation Report was placed on his record and may have been a factor in a later denial of parole. It does not appear that plaintiff has ever actually been celled with a member of another race. Plaintiff also states that the policies that arose from Johnson should not apply to him because he was not a party to that action.

---

[1] The undersigned notes that being validated as a gang member may also lead to placement in the Secured Housing Unit that can result in the loss of many privileges.

III. Motion to Dismiss

        Legal Standard

In order to survive dismissal for failure to state a claim pursuant to Rule 12(b)(6), a complaint must contain more than a "formulaic recitation of the elements of a cause of action;" it must contain factual allegations sufficient to "raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955 (2007). "The pleading must contain something more...than...a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." Id., quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-36 (3d ed. 2004). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937 (2009) (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

In considering a motion to dismiss, the court must accept as true the allegations of the complaint in question, Hospital Bldg. Co. v. Rex Hospital Trustees, 425 U.S. 738, 740, 96 S. Ct. 1848 (1976), construe the pleading in the light most favorable to the party opposing the motion and resolve all doubts in the pleader's favor. Jenkins v. McKeithen, 395 U.S. 411, 421, 89 S. Ct. 1843, reh'g denied, 396 U.S. 869, 90 S. Ct. 35 (1969). The court will "'presume that general allegations embrace those specific facts that are necessary to support the claim.'" National Organization for Women, Inc. v. Scheidler, 510 U.S. 249, 256, 114 S.Ct. 798 (1994), quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 561, 112 S. Ct. 2130 (1992). Moreover, pro se pleadings are held to a less stringent standard than those drafted by lawyers. Haines v. Kerner, 404 U.S. 519, 520, 92 S. Ct. 594 (1972).

        Collateral Estoppel

Defendants note that plaintiff was originally a joint plaintiff in another case with the exact same claims, Glover v. Cate, No. 2:10-cv-0430 KJM KJN P. That case was dismissed

for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), similar to the pending motion to dismiss.  However, prior to the dismissal plaintiff was severed from that case.  Plaintiff's case was ultimately dismissed in that action for failure to exhaust administrative remedies.  See No. 2:10-cv-1093 GEB KJN P.  Plaintiff apparently exhausted the administrative remedies and filed the instant action.  Defendants argue that the doctrine of collateral estoppel should apply to many of the claims that were already dismissed.  However, rather than analyze the collateral estoppel doctrine and the tenuous privity argument between plaintiff and a different prisoner who filed the same case, the undersigned will instead look to the underlying claims.

Johnson v. California

Plaintiff believes that the integration policy instituted in light of Johnson cannot apply to him because he was not a party to that action and that case was not a class action. However, plaintiff is confused about the application of Johnson.  Whether or not plaintiff was a party or not to Johnson is of no consequence to this action.  This court is bound by authority of the Supreme Court and Johnson applies to the instant case.

Plaintiff also repeatedly states that strict scrutiny should be used by defendants in determining housing and what inmates can be housed with inmates of other races.  Courts apply strict scrutiny to determine if a raced based policy violates the Equal Protection Clause of the Fourteenth Amendment. Johnson, at 505.  Plaintiff misunderstands the application of strict scrutiny.  Johnson concerned the proper level of constitutional scrutiny that should be applied to a claim brought in court.  While individuals and entities should be guided by court decisions announcing important principles, and may ultimately be liable if they do not, Johnson does not require that prison officials use a strict scrutiny standard of review in prison classification hearings for housing assignments.  In any event, plaintiff's Equal Protection claim is meritless for the reasons set infra.

Strict scrutiny is not applied to determine what process is due under the Fourteenth Amendment when an inmate contends prison officials deprived that inmate of an

identified liberty interest.  See Sandin v. Conner, 515 U.S. 472, 483-84, 115 S.Ct. 2293 (1995) (liberty interest is defined as "freedom from restraint which . . . imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.").  Therefore, plaintiff's arguments that Johnson does not apply or, conversely and inconsistently, strict scrutiny should apply at classification hearings are meritless.

### Due Process

Plaintiff contends that defendants determination that he could share a cell with an inmate of a different race violated his due process rights as he was unable to call witnesses, present evidence and testify on his own behalf, apparently the protections set forth by Wolff v. McDonnell, 418 U.S. 539, 94 S.Ct. 2963 (1974).  Defendants argue that plaintiff does not possess a liberty interest in any particular classification designation pursuant to Sandin that would require the Wolff protections.

The Fourteenth Amendment provides that no state shall deprive a person of life, liberty, or property without due process of law.  These procedural guarantees apply only when a constitutionally-protected liberty or property interest is at stake.  Board of Regents v. Roth, 408 U.S. 564, 569-70, 92 S.Ct. 2701 (1972) (the Fourteenth Amendment's Due Process Clause does not trigger the need for procedural protections in every instance involving the state's deprivation of an individual's liberty, but only when there is a cognizable liberty interest at stake), overruled in part on other grounds by Paul v. Davis, 424 U.S. 693, 96 S.Ct. 1155 (1976).  Protected liberty interests arise from the Fourteenth Amendment's Due Process Clause itself, or from state laws or regulations deemed to have created a liberty interest cognizable as a civil right.  Meachum v. Fano, 427 U.S. 215, 224-27, 96 S.Ct. 2532 (1976).

To survive Rule 12(b)(6) review, the complaint must allege facts permitting a finding that the plaintiff has a liberty interest at stake, arising from either the Due Process clause or from state-created sources.  Sandin, 515 U.S. at 477-78 (examining whether state prison regulations or the Due Process Clause afforded inmate a protected liberty interest that would

entitle him to procedural protections before transfer into segregation); see Roth, 408 U.S. at 569 ("The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property").

> These interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to the protection by the Due Process Clause of its own force . . . , nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.

Sandin, 515 U.S. at 484.

Changes in a prisoner's conditions of confinement can amount to a deprivation of a liberty interest constitutionally protected under the Due Process Clause, but only if the liberty interest in question is one of real substance. Sandin, 515 U.S. at 477-78. Only in those cases where a sufficiently substantial liberty interest is at stake must the court evaluate whether the process received comported with minimum procedural due process requirements. Jackson v. Carey, 353 F.3d 750, 755 (9th Cir. 2003) (internal quotations omitted). If the court answers the first question in the negative, the plaintiff has failed to state a section 1983 claim for a Fourteenth Amendment violation. In order to find a liberty interest conferred by state law, the analysis focuses on the nature of the deprivation rather than on the language of any particular regulation, to avoid involvement of federal courts in day-to-day prison management. See Sandin, 515 U.S. at 479-82, 483.

Ultimately, plaintiff has failed to allege facts supporting a claim that he had a protected liberty interest in not sharing a cell with a member of another race. A prisoner does not have a constitutional right to a particular classification status. Hernandez v. Johnston, 833 F.2d 1316, 1318 (9th Cir. 1987) (quoting Moody v. Daggett, 429 U.S. 78, 88 n. 9, 97 S.Ct. 274 (1976), wherein the Supreme Court, in a footnote, explicitly rejected a claim that "prisoner classification and eligibility for rehabilitative programs in the federal system" invoked due process protections). Thus, in general, prison officials' housing and classification decisions do

not give rise to federal constitutional claims encompassed by the protection of liberty and property guaranteed by the Fifth and Fourteenth Amendments.  See Board of Regents v. Roth, 408 U.S. 564, 569, 92 S.Ct. 2701 (1972); see also Myron v. Terhune, 476 F.3d 716, 718 (9th Cir. 2007) (classification at a Level IV prison rather than at a Level III prison did not subject Myron to an atypical and significant hardship).  Absent the existence of a protected liberty interest, and as sharing a cell with a member of another race fails to demonstrate an "atypical and significant hardship", plaintiff's due process claim fails.  Wilkinson v. Austin, 545 U.S. 209, 221, 125 S.Ct. 2384 (2005).

Equal Protection

Plaintiff alleges that the provisions of the CDCR code that integrate housing violate the Equal Protection Clause because he has been labeled as "Race Eligible" due to his status as a white man with no gang affiliation, while members of certain gangs are not classified as "Race Eligible."  Plaintiff contends these provisions violate Johnson because they use race as a classification.  Defendants contend that the use of these classifications are to ensure the racial integration policies are implemented safely, in conformance with Johnson, 543 U.S. at 512 (the "necessities of prison security and discipline . . . are a compelling government interest justifying only those uses of race that are narrowly tailored to address those necessities.")

The Equal Protection Clause requires that persons who are similarly situated be treated alike.  City of Cleburne v. Cleburne Living Center, Inc., 473 U.S. 432, 439, 105 S.Ct. 3249 (1985).  An equal protection claim may be established by showing that the defendant intentionally discriminated against the plaintiff based on the plaintiff's membership in a protected class, Serrano v. Francis, 345 F.3d 1071, 1082 (9th Cir. 2003), or that similarly situated individuals were intentionally treated differently without a rational relationship to a legitimate state purpose, Village of Willowbrook v. Olech, 528 U.S. 562, 564, 120 S.Ct. 1073 (2000).  A plaintiff must allege sufficient facts either showing intentional unlawful discrimination or "that are at least susceptible of an inference of discriminatory intent."  Monteiro v. Tempe Union High

Sch. Dist., 158 F.3d 1022, 1026 (9th Cir. 1998).

In the prison context, a prisoner must demonstrate that his treatment is invidiously dissimilar to that received by other inmates. A prison classification based on race is at once suspect and is subject to strict scrutiny. Therefore, prison officials must demonstrate that any policy based on race is narrowly tailored to meet a compelling government interest. See Johnson 543 U.S. at 514.

Plaintiff cannot claim an Equal Protection Clause (discrimination) violation when his claim is not that he is being segregated or housed only with members of his own race but that plaintiff has been classified as "Race Eligible," which means plaintiff is eligible for integrated housing. Plaintiff cannot articulate a claim of racial discrimination based on being subjected to a prison housing regulation which does not use race as the main determining factor for housing. A claim of racial discrimination must be based on an allegation of compelled segregated housing, rather than compelled integrated housing. "An express racial classification . . . [is] immediately suspect." Johnson, 543 U.S. at 509 (internal citation omitted). Here, the policy at issue specifically states that "[a]n inmate's race will not be used as a primary determining factor in housing an institution's inmate population." Department of Corrections and Rehabilitation Operations Manual § 54055.4. The provisions of § 54055.4 further state that "[h]ousing assignments will be determined in a manner that will ensure that the safety, security, treatment, and rehabilitative needs of the inmate are considered, as well as the safety and security of the public, staff, and institutions." Id. Thus, by its very terms the policy at issue provides that race is not the primary determining factor in housing, but that certain individual case factors, such as history of racial violence, disciplinary history, etc., will be used to ensure safety. The terms used in § 54055.5.1 reflect the various classifications are used to ensure the safety and security of the inmates and the institution.

The Fourteenth Amendment bans racial discrimination of the sort plaintiff seeks to impose in the form of segregation by race. Johnson, at 510-511. Thus, plaintiff's equal

8

protection claim fails. See Bjorlin v. Hubbard, 2010 WL 457685 at *1 (E.D. Cal. 2010) ("[N]either a[] [sensitive needs yard] or a [general population] inmate is entitled to be housed with a member of his own race, nor can he claim an actual injury when his claim is not that he is being segregated or housed only with members of his own race but is rather the reverse that he is being told he must agree to integrated housing.") (recommending that Bjorlin's claims of discrimination and violation of his rights under the Equal Protection Clause of the Fourteenth Amendment by any prison policy of integrated housing be dismissed; adopted in full by district court order dated May 10, 2010).

<u>Religious Claims</u>

Plaintiff contends that he is a Christian/Odinist and his religion demands that he be truthful to his race and not allow alien races to pollute his race or religion with alien practices. Plaintiff concludes that sharing a cell with another race would violated these tenants.

While inmates retain their First Amendment right to the free exercise of religion, a regulation impinging on an inmate's constitutional rights passes muster so long as it is reasonably related to a legitimate penological interest. Henderson v. Terhune, 379 F.3d 709, 712 (9th Cir. 2004), citing O'Lone v. Estate of Shabazz, 482 U.S. 342, 348, 107 S.Ct. 2400 (1987) and Turner v. Safley, 482 U.S. 78, 89, 107 S.Ct. 2254 (1987). The protections of the Free Exercise Clause are triggered when prison officials substantially burden the practice of an inmate's religion by preventing him from engaging in conduct which he sincerely believes is consistent with his faith. Shakur v. Schriro, 514 F.3d 878, 884–85 (9th Cir. 2008).

The Religious Land Use and Institutionalized Persons Act of 2000 provides in part:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person-
>
> (1) is in furtherance of a compelling government interest; and
> (2) is the least restrictive means of furthering that compelling government interest.

42 U.S.C. § 2000cc-1.

Both the First Amendment and RLUIPA require plaintiff to demonstrate a burden on the ability to practice his religion. Other than stating his religion demands being truthful to his race which forbids him from sharing a cell with another race, plaintiff has failed to describe how a cellmate of a different race burdens his ability to practice his religion. In fact, plaintiff has provided no information regarding the practices of his religion so he has failed to describe any possible burden that would exist with a cellmate from a different race. Regardless, even if plaintiff could demonstrate a burden on his religion, defendants have shown a compelling government interest in conforming to sixty years of Supreme Court authority that rejects racial segregation. See e.g. Bob Jones University v. United States, 461 U.S. 574, 592, 103 S.Ct. 2017 (1983) (tax exempt status denied to a religious school because "racial discrimination in education violates deeply and widely accepted views of elementary justice.")

Eighth Amendment

Plaintiff has not suffered any injuries as a result of the racial integration policy, but states harm in the future is possible, as other whites have stated harm could befall plaintiff if he shares a cell with another race. In fact, the only racial violence plaintiff describes is when plaintiff himself slashed the face and disfigured his former cellmate because he was black.

A claim is legally frivolous when it lacks an arguable basis either in law or in fact. Neitzke v. Williams, 490 U.S. 319, 325 (1989); Franklin v. Murphy, 745 F.2d 1221, 1227-28 (9th Cir. 1984). The court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. Neitzke, 490 U.S. at 327. The critical inquiry is whether a constitutional claim, however inartfully pleaded, has an arguable legal and factual basis. See Jackson v. Arizona, 885 F.2d 639, 640 (9th Cir. 1989); Franklin, 745 F.2d at 1227.

In the instant case, plaintiff's allegations are far too speculative to state a cognizable Eighth Amendment claim, as it does not appear plaintiff will ever be forced to share a

cell with a member of another race let alone that he will be assaulted. See Farmer v. Brennan, 511 U.S. 825, 843, 114 S.Ct. 1970 (1994) ("It is not enough merely to find that a reasonable person would have known, or that the defendant should have known.").[2]

Defendants' motion to dismiss should be granted in its entirety and as it is clear that no amount of amendment could cure the deficiencies of the complaint, this case should be dismissed with prejudice.

Accordingly, IT IS HEREBY ORDERED that:

1. A district judge be assigned to this case;

2. Defendant's motion to strike plaintiff's second reply (Doc. 22) is denied and the undersigned has considered that filing.

IT IS HEREBY RECOMMENDED that the motion to dismiss (Doc. 9) be granted in its entirety for plaintiff's failure to state a claim upon which relief may be granted and this case dismissed with prejudice and closed.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within seven days after service of the objections. The parties are

\\\\\

\\\\\

\\\\\

---

[2] Plaintiff also alleges that when he refused to be celled with a non-white inmate he was issued a Rule Violation Report which appeared on his record and may have contributed to a parole denial. To the extent plaintiff seeks monetary damages and injunctive relief any such allegation fails as plaintiff has failed to set forth a cognizable claim as it cannot be shown that the Rule Violation Report was improperly issued.

1  advised that failure to file objections within the specified time may waive the right to appeal the

2  District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

3  DATED: June 21, 2012

4                                               /s/ Gregory G. Hollows
                                  UNITED STATES MAGISTRATE JUDGE

5  GGH: AB
   walk2728.mtd